## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ANGEL BERROCAL,**

        **Plaintiff,**

                                  **Case No. 2:18-cv-9567**

      **v.**                            **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

        **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Angel Berrocal for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff was last insured for disability insurance benefits on December 31, 2010. R. 14, 163. On June 2, 2011, Plaintiff filed an application for benefits, alleging that he has been disabled since September 23, 2005. R. 148–49, 309–12. The application was denied initially on August 16, 2011, and upon reconsideration on February 13, 2012. R. 148, 153, 165–69, 171–73. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 174–75. Administrative

Law Judge Leonard Olarsch ("ALJ") held a hearing on August 1, 2012, at which Plaintiff appeared without counsel. R. 131–47. The ALJ advised Plaintiff of his right to legal representation and suggested possible sources of representation. R. 133–47. On February 27, 2013, the ALJ held a second hearing at which Plaintiff again appeared and testified without the assistance of counsel. R. 84–130; *see also* R. 30 ("Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative."). In a fully favorable decision dated March 19, 2013, the ALJ concluded that Plaintiff was disabled within the meaning of the Social Security Act since September 23, 2005, Plaintiff's alleged disability onset date ("the 2013 decision"). R. 38–43.

Thereafter, for reasons not apparent on the present record, the ALJ issued a second decision dated April 14, 2015, in which the ALJ again concluded that Plaintiff was disabled within the meaning of the Social Security Act, but from an amended disability onset date of February 26, 2010, rather than the original alleged disability onset date of September 23, 2005 ("the 2015 decision"). R. 30–34.

Plaintiff appealed the 2015 decision to the Appeals Council, disputing the amended alleged onset date of February 26, 2010. R. 268–69. The Appeals Council granted the request for review and, on January 9, 2017, vacated the entire 2015 decision and remanded the case to the ALJ for further consideration. R. 159–64. The Appeals Council specifically ordered, *inter alia*, that upon remand the ALJ will "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's physical **and** mental impairments and any resulting limitations through December 31, 2010, the date last insured[,]" R. 163 (emphasis in original), and "[e]valuate the issue of reopening and the established onset date of disability if the new decision is favorable to the claimant." R. 164; *see also* R. 162 (stating that "[t]he established onset of disability [of

2

February 26, 2010] appears to be incorrect. The claimant alleged that disability began on September 23, 2005 . . . It is unclear why the Administrative Law Judge considered February 26, 2010 as the established onset date").

The same ALJ held a third hearing on March 29, 2017 ("the 2017 hearing"), at which Plaintiff, again appearing without the assistance of counsel, testified, as did a medical expert and a vocational expert. R. 44–83; *see also* R. 12 ("Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative."). In a decision dated May 15, 2017 ("the 2017 decision"), the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from September 23, 2005, Plaintiff's original alleged disability onset date, through December 31, 2010, the date on which Plaintiff was last insured for disability insurance benefits. R. 12–21. The 2017 decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 19, 2018. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 3, 2019, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 16.[1] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 24. The matter is now ripe for disposition.[2]

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

---

[1] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

[2] On June 17, 2020, the Court denied Plaintiff's request for default and default judgment. *Opinion and Order*, ECF No. 25.

3

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

     Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

5

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An

award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

Finally, as previously noted, Plaintiff in this case is proceeding without the assistance of counsel. Courts have a duty to liberally construe *pro se* litigants' filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 340 (3d Cir. 2011) ("Pro se pleadings are often submitted by individuals with limited skills and technical expertise in the law."). Despite this liberal construction, however, "unrepresented litigants are not relieved from the rules of procedure and the requirements of substantive law." *Parkell v. Danberg*, 833 F.3d 313, 324 n.6 (3d Cir. 2016) (citations omitted); *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (stating that *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants") (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "While a court must construe a pro se litigant's pleadings liberally, it need not act as his advocate." *United States v. Peppers*, 482 F. App'x 702, 704 (3d Cir. 2012).

## B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    THE ALJ'S 2017 DECISION AND APPELLATE ISSUES

The Plaintiff was 46 years old on the date on which he was last insured. R. 20.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between September 23, 2005, Plaintiff's alleged disability onset date, and December 31, 2010, the date on which he was last insured. R. 14.

At step two, the ALJ found that Plaintiff's back impairments and depression were severe impairments. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 14–16.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of light work subject to various additional limitations. R. 16–20. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a material handler. R. 20.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 100,000 jobs as a labeler; approximately 90,000 jobs as a garment folder; approximately 100,000 jobs as an inspector/hand packager–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from September 23, 2005, his alleged disability onset date, through December 31, 2010, the date on which he was last insured. *Id.*

Plaintiff disagrees with the ALJ's findings at steps three, four, and five as well as on procedural grounds; he asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Brief,* ECF No. 27; *Plaintiff's Reply*,

9

ECF No. 30.[3] The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 29.

## IV.   DISCUSSION

Plaintiff raises a number of challenges to the ALJ's treatment of the testimony of Gerald Galst, M.D., F.A.C.C., the medical expert who testified at the 2017 hearing. *Plaintiff's Brief,* ECF No. 27, pp. 6–10; *Plaintiff's Reply*, ECF No. 30, pp. 3, 9–11, 13, 16–18.[4] Plaintiff specifically argues, *inter alia*, that Dr. Galst relied on a misunderstanding of the medical evidence regarding Plaintiff's back impairment, and that the ALJ mischaracterized Dr. Galst's hearing testimony regarding Plaintiff's mental impairments. *Id.* This Court agrees.

In making a disability determination, an ALJ must evaluate all record evidence. *Plummer*, 186 F.3d at 433; *Cotter*, 642 F.2d at 704. "An ALJ must explain the weight given to physician opinions. . . ." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011) (citing 20 C.F.R. § 404.1527(f)(2)(ii)). Moreover, an ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli*, 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do

---

[3] Plaintiff filed an "Answer to Defendant's Brief," ECF No. 30, which the Court receives as Plaintiff's Reply Brief.
[4] Plaintiff mistakenly refers to Dr. Galst as "Dr. Gaust" or "Dr. Gaulst" in his opening brief.

10

expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter*, 642 F.2d at 705). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209–10 (3d Cir. 2019) ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

As previously noted, after vacating the entire 2015 decision, the Appeals Council ordered the ALJ upon remand to, *inter alia*, "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's physical **and** mental impairments and any resulting limitations through December 31, 2010, the date last insured[.]" R. 163 (emphasis in original). Dr. Galst, whose private practice includes cardiology and internal medicine, R. 627, testified as a medical expert at the 2017 hearing. R. 67–76. The ALJ specifically considered Dr. Galst's hearing testimony in the 2017 decision. R. 12–21. At step four of the sequential evaluation, the ALJ

11

found that Plaintiff had the RFC to perform "the full range of light work as defined in 20 CFR 404.1566(b). The claimant can perform work that is unskilled, with occasional interaction with supervisors, coworkers and the general public; and allows the claimant to be off task up to ten percent of the workday." R. 16. In support of this RFC determination, the ALJ afforded "great weight" to Dr. Galst's opinions:

> Medical Expert (ME), Dr. Gerald Galst testified that the claimant's condition does not meet or equal a listing. He stated that the claimant has a small disc herniation. There are no records in the file regarding diabetes. He indicated that the issues comes [sic] down to his mental health. He noted the claimant has problems focusing and would have issues working with others. He noted that complex tasks would be a challenge. After reviewing the record, he indicated that the claimant would be able to lift up to ten pound[s] frequently and 20 pounds occasionally, stand for six out of eight hours, with frequent fingering and handling abilities. . . .

> The ME found the claimant could not perform complex tasks, and would have issues working with others. However, he found that he could lift up to 20 pounds occasionally, stand for six out of eight hours, with frequent fingering and handling abilities. I have considered the findings of the ME and give them great weight as they are consistent with the overall record.

R. 19.

Dr. Galst actually testified that his opinion regarding Plaintiff's back impairment was based on "the physical evidence of a small herniation at L4/L5," and "the presumption that there is no root canal involvement or spinal stenosis." R. 71. The ALJ later confirmed this presumption when he summarized Dr. Galst's testimony for Plaintiff at the 2017 hearing:

> ALJ: He's looked at the medical records objectively. He finds a small herniation at L4/L5, *no impingement nerve impingement and no stenosis*. That's what he finds, and based on that, he gave us his opinion of how long you could sit for, how long you could stand for, how much you could lift, how much you lift occasionally.

R. 73 (emphasis added).

12

As Plaintiff notes, however, there is evidence of stenosis in the record. *Plaintiff's Brief*, ECF No. 27, pp. 7, 9–10; *Plaintiff's Reply*, ECF No. 30, p. 6. A September 2004 MRI of Plaintiff's lumbar spine revealed, *inter alia*, as follows:

> At L1-2, L2-3 and L3-4, no disc bulge or protrusion is identified. There is no evidence of spinal canal or neuroforaminal stenosis.
>
> At L4-5, there is loss of signal within the disc space on T2 weighted images consistent with desiccation. There is a small central disc herniation. *This is now causing significant spinal canal or neuroforaminal stenosis*.[5]
>
> At L5-S1, there is loss of signal on T2 weighted images consistent with disc disiccation. There is very mild diffuse disc bulge. There is very mild diffuse disc bulge. *There* [sic] *is now causing significant spinal canal or neuroforaminal stenosis*.
>
> IMPRESSION. 1. Mild spondylitic changes at L4-S, and L5-Sl with a small disc herniation at L4-5 as described above.

R. 548 (emphasis added). Moreover, on June 14, 2005, Ari Ben-Yishay, M.D., diagnosed lumbar stenosis.[6] R. 506, 603 (duplicate).

Although the 2017 decision acknowledged the finding of spinal stenosis in the September 2004 MRI, R. 18, the ALJ nevertheless accorded "great weight" to Dr. Galst's opinion at step four and relied on this medical expert's testimony when crafting the RFC determination. R. 19 (assigning "great weight" to Dr. Galst's findings), 20 (concluding that "[t]he residual functional capacity is supported by the evidence as discussed herein"). The flaw in Dr. Galst's opinion, *i.e.*, his presumption that there was no finding of spinal stenosis in the record, therefore undermines

---

[5] "Neuroforaminal stenosis is a type of spinal stenosis." *Bush v. Berryhill*, No. 17 C 5335, 2018 WL 6192172, at *4 n.7 (N.D. Ill. Nov. 28, 2018) (remanding action where, *inter alia*, "the ALJ ignored medical evidence of lumbar spinal stenosis in the record") (citations omitted).
[6] "Lumbar stenosis (spinal stenosis) is a condition whereby either the spinal canal (central stenosis) or one or more of the vertebral foramina (foraminal stenosis) becomes narrowed." *Houseman v. Smith*, No. 2:10-CV-01426 DAD P, 2013 WL 315245, at *10 (E.D. Cal. Jan. 25, 2013) (citations omitted).

the ALJ's RFC determination. *Id.* Based on this record, the Court cannot conclude that substantial evidence supports the ALJ's evaluation of Dr. Galst's opinion as to Plaintiff's physical impairments—and, therefore, the RFC determination—because Dr. Galst relied on a misunderstanding of the record evidence and did not take into account all the relevant objective medical evidence when reaching those opinions. *Cf. Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) (reversing and remanding where, *inter alia*, "[t]he ALJ supports his rejection of Dr. Grem's opinion of disability in large part on evidence that does not exist . . . Furthermore, the ALJ mischaracterizes the evidence that does exist"); *Rodriguez v. Saul*, No. CV 19-16569, 2020 WL 5201346, at *3 (D.N.J. Sept. 1, 2020) ("Because the ALJ gave great weight to the medical expert's testimony, including the potentially incorrect statements about narcolepsy and cataplexy, when determining that Claimant does not have an impairment that meets or medically equals the severity of a listed impairment, the Court cannot conclude that ALJ's decision was based upon substantial evidence."); *Gleason v. Saul*, No. 19-cv-3713, 2020 WL 1975378, at *6 (E.D. Pa. Apr. 24, 2020) ("Mistakes and factual errors are not substantial evidence to support an ALJ's decision.") (citations omitted).

Plaintiff also argues that the ALJ mischaracterized Dr. Galst's hearing testimony regarding Plaintiff's mental impairments by referring to "opinions as if they were given by Dr. Galst which they were not[.]" *Plaintiff's Brief*, ECF No. 27, p. 8; *see also id.* at 10. This Court agrees. In considering Plaintiff's mental impairments, the ALJ summarized Dr. Galst's testimony as follows:

> He indicated that the issues comes [sic] down to his mental health. He noted the claimant has problems focusing and would have issues working with others. He noted that complex tasks would be a challenge.

14

R. 19.  However, the medical expert never testified to any of this. *See* R. 67–76. Dr. Galst

actually testified as follows:

> Q Just tell me this. Based on the evidence that you've read can you give us an
> opinion, your opinion of whether this Claimant's problems meet or equal any of the
> listings and what the RFC is?
>
> A Your Honor, I would state at the outset I am not a psychiatrist.
>
> Q I understand.
>
> A But I have had experience dealing with patients that had psychiatric problems
> and illnesses. And it is my understanding that the Claimant has psychiatric illnesses
> and is in treatment for those with counseling and also with pharmacological
> intervention.
>
> Q Could I possibly get a word in edgewise, here? Slow down. *I understand that
> you're not up there and qualified to give your opinion on that*. What is your opinion
> of the physical of it *and whatever psychiatric part you can give*?
>
> A He does not meet a listing and can sit for six hours in an eight-hour period and
> can do light work as defined.

R. 68–69 (emphasis added). Thus, although Dr. Galst testified that Plaintiff suffers from

"psychiatric illnesses," *id.*, he expressed no opinion whatsoever as to any limitation resulting

from those illnesses. *See* R. 67–76. Accordingly, the Court cannot find that substantial evidence

supports the ALJ's decision in this regard. *Cf. Brownawell*, 554 F.3d at 357.

In sum, because the ALJ based his RFC determination, at least in part, on Dr. Galst's

flawed testimony regarding Plaintiff's back impairments and because the ALJ mischaracterized

Dr. Galst's testimony regarding Plaintiff's mental impairments, the Court finds that the ALJ's

2017 decision is not supported by substantial evidence. This Court therefore concludes that the

decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[7]

## V.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  June 4, 2021                              *s/Norah McCann King*
                                                NORAH McCANN KING
                                                UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's physical and mental impairments, the Court does not consider those claims. However, on remand, the Commissioner may consider assigning the matter to a different ALJ, in light of the impatience and condescension shown by this ALJ toward Plaintiff. *See, e.g.*, R. 46, 49, 71, 75. *See also* R. 82 ("I might have gotten a little impatient, but that's not going to impact on my fairness to you in deciding your case.") *See Richardson v. Perales,* 402 U.S. 389, 400–01 (1971)(The administrative hearing should be "understandable to the layman claimant, should not necessarily be stiff and comfortable only for the trained attorney, and should be liberal and not strict in tone and operation."). *See also Ventura v. Shalala*, 55 F.3d 900, 904 (3d Cir. 1995)("[T]he ALJ's offensive conduct prevented claimant from receiving a full and fair hearing and, therefore, a new hearing must be held before another ALJ to determine whether claimant is entitled to disability benefits.")